**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
────────────────────────────────

**UNITED STATES OF AMERICA,**

                    **Plaintiff,**

          **v.**                                        **05-CR-293A**

**KEVIN SMITH,**

                    **Defendant.**
────────────────────────────────

## REPORT, RECOMMENDATION AND ORDER

         This case was referred to the undersigned by the Hon. Richard J. Arcara,

in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report

upon dispositive motions.


## PRELIMINARY STATEMENT

         The defendant, Kevin Smith ("the defendant"), is charged in a

multicount Second Superseding Indictment with having violated Title 18 U.S.C. § 287

(Counts 1 through 7); Title 26 U.S.C. § 7206(2) (Count 8) and Title 18 U.S.C. § 1341

(Counts 9 through 11).  He has filed motions wherein he seeks: (1) suppression of

evidence; and (2) dismissal of Counts 1 through 7 of the Indictment.  (Docket #16, p. 3,

¶ I; p. 27, ¶ II).[1]

────────────────────────────

         [1] The motions were originally filed before the Second Superseding Indictment was
filed and were given Docket #16.  After the Second Superseding Indictment was filed,
these motions were refiled and given Docket #21.  However, the references to page
numbers and paragraphs are based on the filing under Docket #16.

The government has filed its opposition to the defendant's motions.
(Docket #25, pp. 2-18).

## FACTS[2]

In May of 2003, the Jamestown Police Department received numerous
complaints alleging that the defendant was engaging in numerous fraudulent and illegal
business activities in connection with his auto sales business.  As a result, an
investigation was undertaken, and on May 27, 2003, Detective Kohl of the Jamestown
Police Department and New York State Trooper Sgt. Worrell applied for a search
warrant seeking to search the premises located at 3554 West Oak Hill Road, Town of
Ellicott, County of Chautauqua, State of New York, that being the residence of the
defendant which also contained an area within the home that was used as a business
office.  The application also sought authority to search "all vehicles on the premises of
3554 West Oak Hill Road" as well as certain named persons who "may be on the
premises of 3554 West Oak Hill Road."  (Defendant's Exhibit A attached to Docket
#16).

In addition to the joint sworn application by Detective Kohl and Sgt.
Worrell, sworn to May 27, 2003, the officers also submitted six written sworn

---

[2] The facts stated herein have been gleaned from the written submissions of
counsel including exhibits attached thereto.

statements from individuals who had business dealings with the defendant and who complained about the "illegal" actions of the defendant in those business dealings. (Docket #27, Exhibits B1-B7 attached to sealed affidavit of Assistant United States Attorney Wylegala sworn to May 25, 2006 and marked Docket #27).  These sworn statements described alleged fraudulent acts committed by the defendant in the operation of his auto business.

Also submitted in support of the search warrant application was a "Supporting Deposition" executed by New York State Trooper David A. Sena wherein he described certain alleged fraudulent actions by the defendant with regard to the sale of an automobile.  (Docket #27, Exhibit B-8 attached thereto).  This "Supporting Deposition" described an interview with a witness whom the defendant directed to tape record her interview with the authorities investigating the defendant.

Detective Kohn and Sgt. Worrell appeared before Chautauqua County Court Judge John T. Ward on May 27, 2003 and presented the Application for a Search Warrant along with the aforesaid sworn statements and "Supporting Depositions" to the judge pursuant to § 690.35 of the New York Criminal Procedure Law.

Judge Ward issued a search warrant authorizing a search of the premises located at 3554 West Oak Hill Road, Town of Ellicott, County of Chautauqua, State of New York on May 27, 2003 and the seizure of the following from said premises:

1. Financial records, ledgers, bank checks, bank statements and similar documents reflecting receipt and disbursement of funds;

2. Business ledgers, receipts, invoices and bills;

3. Credit cards in various names with various institutions together with credit card applications, statements and receipts;

4. Correspondence to and from banks, credit card companies, insurance companies and/or agencies on behalf of customers;

5. Customer files, complaints, correspondences (sic), sale (sic) records, loan and lease agreements;

6. Department of Motor Vehicles receipts and applications for registrations and titling of customer vehicles;

7. Computer printouts, program disks, data storage devices, scanners and other computer software and hardware identifying sales, personnel and other operational data pertaining to the conduct of the business;

8. Cassette recorders, micro-cassettes (sic) recorders, cassettes, micro-cassettes and other voice recording devices pertaining to the conduct of the business;

9. Residential and Office telephone records and bills, cell phone records and bills pertaining to the conduct of business;

10. Temporary ten day inspection tags, VIN # tags (Vehicle Identification Number) and license plates that are expired and/or not designated for any vehicles on the premises and;

11. Customer's 2002 State and Federal Income Tax Return records prepared at THE AUTO STORE and the Income Tax Refunds that were allegedly applied or not applied as down payments on sales of vehicles from such Income Tax preparation.

-4-

(Docket #16, Exhibit A attached thereto).

Judge Ward signed the search warrant as "Ellicott Justice" and authorized entry into the premises "without giving notice of [the officers'] authority and purpose." (Docket #16, Exhibit A attached thereto).

The officers executed the search warrant on May 28, 2003 and entered the defendant's premises located at 3554 West Oak Hill Road, Ellicott, New York and seized a number of documents and business records as well as "tax returns, computers, credit cards, printers and receipts."  (Docket #16, p. 12, ¶ 5).  An inventory of all of the materials seized from 3554 West Oak Hill Road, Ellicott, New York was prepared and filed.  (Docket #16, Exhibits A-11 through A-18).

## DISCUSSION AND ANALYSIS

I.     **Defendant's Motions To Suppress Evidence:**

The defendant claims that "the application for the warrant, the warrant itself, and the actual search all violated the Fourth Amendment to the United States Constitution, because: there was no probable cause to support the issuance of a warrant, to suggest that any crime had occurred at the home to be searched, or to suggest that any of the items requested would be found at the home; the application/warrant were overbroad and did not particularize the items to be seized as to any putative criminal conduct or classes of documents, allowing the wholesale

seizure of items; the application was not even signed; amazingly the agents over executed the warrant, seizing items beyond those specifically authorized, and improperly seizing both confidential medical records and privileged and confidential attorney-client communications; there was no basis for a no-knock warrant; the search ended up being a general, all-records search; the issuing judge simply rubber-stamped the defective application; the application contained false statements and/or material omissions; and the good faith exception will not save the search that was undertaken pursuant to this patently and facially defective warrant/application."  (Docket #16, p. 3).

Although the search warrant at issue is a state warrant issued by a New York State County Court Judge based upon a joint sworn application of state police officers, review of the validity of the search warrant in question must be had solely in the context of the Fourth Amendment to the United States Constitution where the evidence seized pursuant to that warrant is to be employed in a federal prosecution. *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993); *see Preston v. United States*, 376 U.S. 364 (1964) ("The question whether evidence obtained by state officers and used against a defendant in a federal trial was obtained by unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers").

**1.      Defendant's Claim That The Application And The
          Warrant Were Overbroad And Lacked Particularization
          Thereby Negating The Application Of *Leon*:**

The Fourth Amendment to the United States Constitution expressly
provides that "no warrants shall issue, but upon probable cause, supported by oath or
affirmation, and particularly describing the place to be searched, and the person or
things to be seized."  U.S. Const. amend IV.  A similar requirement is found in Rule
41(e)(2) of the Fed. R. Crim. P.

The listing of records and things to be seized in the warrant application
(Defendant's Exhibit A-4-5 attached to Docket #16) is exactly duplicated in the search
warrant issued by Judge Ward (Defendant's Exhibit A-1-3 attached to Docket #16) and
consists of the following:

> 1.      Financial records, ledgers, bank checks, bank
>         statements and similar documents reflecting receipt
>         and disbursement of funds;
>
> 2.      Business ledgers, receipts, invoices and bills;
>
> 3.      Credit cards in various names with various institutions
>         together with credit card applications, statements and
>         receipts;
>
> 4.      Correspondence to and from banks, credit card
>         companies, insurance companies and/or agencies on
>         behalf of customers;

5.      Customer files, complaints, correspondences (sic), sale (sic) records, loan and lease agreements;

6.      Department of Motor Vehicles receipts and applications for registrations and titling of customer vehicles;

7.      Computer printouts, program disks, data storage devices, scanners and other computer software and hardware identifying sales, personnel and other operational data pertaining to the conduct of the business;

8.      Cassette recorders, micro-cassettes (sic) recorders, cassettes, micro-cassettes and other voice recording devices pertaining to the conduct of the business;

9.      Residential and Office telephone records and bills, cell phone records and bills pertaining to the conduct of business;

10.     Temporary ten day inspection tags, VIN # tags (Vehicle Identification Number) and license plates that are expired and/or not designated for any vehicles on the premises and;

11.     Customer's 2002 State and Federal Income Tax Return records prepared at THE AUTO STORE and the Income Tax Refunds that were allegedly applied or not applied as down payments on sales of vehicles from such Income Tax preparation.

This Court's review of the search warrant at issue (Defendant's Exhibit A-1-3 attached to Docket #16) clearly establishes that no reference or incorporation by reference or attachment is made as to the sworn application for the search warrant (Defendant's Exhibit A-4-5 attached to Docket #16); nor is there any reference in the search warrant indicating for what crime the investigation and search are being undertaken.  As a result, the search warrant in question essentially authorized the

-8-

police agents "to undertake an indiscriminate rummaging through [the defendant's]

personal effects" thereby causing it to be a "general warrant" lacking sufficient

particularity as required by the Fourth Amendment to the United States Constitution.

      The holding of the Court of Appeals for the Second Circuit addressing a

similar search warrant clearly applies to the case at hand and therefore, brevity is

intentionally sacrificed by quoting the appropriate provisions of that Court's opinion.

> The general warrant - authorizing police agents to undertake
> an indiscriminate rummaging through citizens' personal
> effects - is prohibited by the Fourth Amendment's command
> that "no Warrants shall issue [unless] particularly describing
> the place to be searched, and the persons or things to be
> seized."  U.S. Const. amend IV.  *See Coolidge v. New
> Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29
> L.Ed.2d 564 (1971) (plurality).  In order to prevent a "wide-
> ranging exploratory search," *Maryland v. Garrison*, 480 U.S.
> 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987), the
> warrant must enable the executing officer to ascertain and
> identify with reasonable certainty those items that the
> magistrate has authorized him to seize.  *See Steele v.
> United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69
> L.Ed. 757 (1925); *United States v. Vargas*, 621 F.2d 54, 56
> (2d Cir.), *cert. denied*, 449 U.S. 854, 101 S.Ct. 150, 66
> L.Ed.2d 68 (1980).  Whether a warrant is sufficiently
> particular to pass constitutional scrutiny presents a question
> of law that we decide *de novo*.  *See United States v. Harris,*
> 903 F.2d 770, 774 (10th Cir. 1990); *United States v. Spilotro*,
> 800 F.2d 959, 963 (9th Cir. 1986).
>
> The instant warrant's broad authorization to search for "any
> other evidence relating to the commission of a crime" plainly
> is not sufficiently particular with respect to the things to be
> seized because it effectively granted the executing officers'
> "virtually unfettered discretion to seize anything they [saw]."
> *United States v. Mankani*, 738 F.2d 538, 546 (2d Cir. 1984).
> The government attempts to blunt the implications of this

indiscriminate warrant by urging that, read in context, the broad catch-all phrase refers only to evidence relating to the McDonald's robbery.  It cites *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), in support of this proposition.  *Andresen* involved a fraud investigation concerning the sale of real estate (Lot 13T).  The warrant authorized a search for items pertaining to the sale of Lot 13T, listed several categories and types of evidence separated by semicolons, and concluded with the phrase "together with other fruits, instrumentalities and evidence of crime at this [time] unknown."  427 U.S. at 480-81 n. 19, 96 S.Ct. at 2749 n. 10.  In rejecting the argument that the clause "evidence of crime at this [time] unknown" transformed the warrant into a general warrant, the Supreme Court observed that as the preambulatory phrase "pertaining to [Lot 13T]" was followed by a colon and the following clauses were separated by semicolons, each clause was therefore logically limited to items pertaining to Lot 13T.  *Id*. at 480-82, 96 S.Ct. at 2748-49.  Thus, the catch-all phrase, read in context, authorized only a search for evidence relating to the crime of false pretenses with respect to Lot 13T.

The warrant in the instant case does not lend itself to such a limiting construction.  Nothing on the face of the warrant tells the searching officers for what crime the search is being undertaken.  *Compare, e.g., United States v. Washington*, 797 F.2d 1461, 1472 (9th Cir. 1986) (search of "records" limited to evidence of "prostitution activity" prevents warrant from being overbroad); *United States v. Johnson*, 541 F.2d 1311 (8th Cir. 1976) (per curiam) (in context, "paraphernalia" was limited to that relating to use of marijuana).  Although we have upheld warrants authorizing the seizure of "evidence," "instrumentalities" or generic classes of items where a more precise description was not possible in the circumstances, the warrants in those cases identified a specific illegal activity to which the items related.  *See United States v. Young*, 745 F.2d 733, 758 (2d Cir. 1984) (possession with intent to distribute narcotic controlled substances), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *Makani*, 738 F.2d at 546 (importation and distribution of hashish); *United States v. Dunloy*, 584 F.2d 6, 8 (2d Cir. 1978) (possession with intent to distribute narcotics); *United States v. Scharfman*, 448 F.2d 1352, 1353

n. 1 (2d Cir. 1971) (theft of fur coats), *cert. denied*, 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972).

A failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary. *See Coolidge*, 403 U.S. at 467, 91 S.Ct. at 2038; *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982); *United States v. Klein*, 565 F.2d 183, 186 (1st Cir. 1977); *United States v. Marti*, 421 F.2d 1263, 1268 (2d Cir. 1970).  The particularity requirement prevents this sort of privacy invasion and reduces the breadth of the search to that which a detached and neutral magistrate has determined is supported by probable cause. *See Garrison*, 480 U.S. at 84, 107 S.Ct. at 1016; *Coolidge*, 403 U.S. at 467, 91 S.Ct. at 2038.  Mere reference to "evidence" of a violation of a broad criminal statute or general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize.  *See United States v. Maxwell*, 920 F.2d 1028, 1033 (D.C.Cir. 1990) (wire fraud); *United States v. Holzman*, 871 F.2d 1496, 1509 (fraud) (9th Cir. 1989); *United States v. Fuccillo*, 808 F.2d 173, 176-77 (1st Cir.) (stolen goods), *cert. denied*, 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 374 (1987); *Voss v. Bergsgaard*, 774 F.2d 402, 405 (10th Cir. 1985) (conspiracy); *Cardwell*, 680 F.2d at 77 (tax evasion). Absent some limitation curtailing the officers' discretion when executing the warrant, the safeguard of having a magistrate determine the scope of the search is lost.  As a consequence, authorization to search for "evidence of a crime," that is to say, any crime, is so broad as to constitute a general warrant.

The government nonetheless contends the warrant may be cured by reference to Officer Brickell's affidavit that makes it clear the crime was the McDonald's robbery.  *See, e.g., Harris*, 903 F.2d at 775; *United States v. Johnson*, 690 F.2d 60, 64-65 (3d Cir. 1982), *cert. denied,* 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 450 (1983).  Even assuming the affidavit makes clear that only evidence relating to the McDonald's robbery was to be seized, the government's argument must fail.  A sufficiently specific affidavit will not itself cure an overbroad warrant.  *See, e.g., Marti*, 421 F.2d

at 1268.  Resort to an affidavit to remedy a warrant's lack of particularity is only available when it is incorporated by reference in the warrant itself and attached to it.  *See, e.g., Maxwell*, 920 F.2d at 1031; *Matter of Property Belonging to Talk to the Town Bookstore, Inc.*, 644 F.2d 1317, 1319 (9th Cir. 1981).  The recitation in the instant warrant that it is "issued upon the basis of an application and affidavit[ ] of" Patrolman Brickell does not direct the executing officers to refer to the affidavit for guidance concerning the scope of the search and hence does not amount to incorporation by reference.

*United States v. George*, 975 F.2d 72, 75-76 (2d Cir. 1992).

As part of its response to the defendant's motion to suppress, the government argues that "the motion to suppress is without merit, first because the good faith exception under *Leon* does apply, eliminating the need to further address the issues raised."  (Docket #25, p. 4).  To the contrary, the government's assertion and reliance on *United States v. Leon*, 468 U.S. 897 (1984) is without legal merit, based once again on the Court of Appeals holding in *George* wherein the Court stated:

In *United States v. Leon*, 468 U.S. 897, 919-21, 104 S.Ct. 3405, 3418-19, 82 L.Ed.2d 677 (1984), the Supreme Court stated that the exclusionary rule did not apply to evidence seized in objectively reasonable reliance on a warrant subsequently declared invalid.  Reasonable reliance does not allow an officer to conduct a search with complete disregard of the warrant's validity because the "standard of reasonableness . . . is an objective one, . . . [one that] requires officers to have a reasonable knowledge of what the law prohibits."  *Id*. at 919-20 n. 20, 104 S.Ct. at 3418 n. 20.  Accordingly, the Court recognized that in some circumstances "a warrant may be so facially deficient - *i.e.,* in failing to particularize the place to be searched or the things to be seized - that the executing officer cannot reasonably presume it to be valid."  *Id.* at 923, 104 S.Ct. at

3421.  Such is the case here.

As the above discussion demonstrates, it is obvious that a general warrant authorizing the seizure of "evidence" without mentioning a particular crime or criminal activity to which the evidence must relate is void under the Fourth Amendment. *See Spilotro*, 800 F.2d at 968 (where only limit on scope of search is that items to be seized be evidence of violation of any one of 13 federal statutes, some of exceptional scope, warrant so facially deficient that *Leon* not applicable); *United States v. Leary*, 846 F.2d 592, 606-10 (10th Cir. 1988) (absent some other limiting feature, reference in warrant to statute covering broad range of activity facially deficient and *Leon* inapplicable); *see also Dozier*, 844 F.2d at 708; *Fuccillo*, 808 F.2d at 178; *Washington*, 797 F.2d at 1473; *United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir. 1985).  Since it was quite clear when this warrant was executed that "limits" to a search consisting only of a broad criminal statute were invalid, *a fortiori*, a warrant not limited in scope to *any crime at all* is so unconstitutionally broad that no reasonably well-trained police officer could believe otherwise.

In *United States v. Buck*, 813 F.2d 588 (2d Cir.), *cert. denied*, 484 U.S. 857, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987), we struck down a warrant authorizing the seizure of "any papers, things or property of any kind relating to" the crime under investigation.  Nonetheless, in light of *Young* and *Dunloy* - that upheld warrants using boilerplate language preceded by a list of specific items - we concluded *Leon* applied because the officers could not be expected to anticipate the invalidation of a warrant using only a catch-all phrase unaccompanied by any other limiting language, an unsettled question "going far beyond the ambiguity inherent in every new application of law."  *See id*. at 592-93.  We cautioned that "with respect to searches conducted hereafter, police officers may no longer invoke the reasonable-reliance exception to the exclusionary rule when they attempt to introduce as evidence the fruits of searches undertaken on the basis of warrants containing only a catch-all description of the property to be seized."  *Id*. at 593 n. 2.

Although the warrant here does not contain "only" a catch-all description of the property to be seized, the portion under

which admission of the shotgun is sought is tantamount to that for Fourth Amendment particularity purposes because it is not tied to the remainder of the warrant and hence, with respect to the scope of the search authorized by the catch-all clause, it stands alone.  In other words, the "evidence" for which the officers were to search under the catch-all clause is not limited either to a generic classification, *e.g.*, records or documents, *see United States v. Riley*, 906 F.2d 841. 844 (2d Cir. 1990), or, even more egregiously, to a particular crime.  While in certain contexts it might be questionable whether a catch-all clause is limited either to the type of evidence or the crime, nothing in this warrant supports such a construction and, therefore, no reasonable officer could think the clause was valid because it was so narrowed.  *Cf. United States v. Strand*, 761 F.2d 449, 456-57 (8th Cir. 1985) (no reasonable basis for officers to believe warrant authorizing seizure of "stolen mail" allowed seizure of ordinary household items).

The subject warrant is unconstitutionally overbroad and, unlike the situation in *Buck*, in light of the settled nature of the law concerning the failure for lack of particularity of warrants authorizing the search for "evidence" limited only by reference to "a crime," it is the type of facially invalid warrant that could not have been relied upon in good faith because "one who simply looked at the warrant, . . . would . . . suspect it was invalid."  *United States v. Gordon*, 901 F.2d 48, 50 (5th Cir.), *cert. denied*, 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990).  *See Leary*, 846 F.2d at 609 (reasonably well-trained officer should know a warrant must provide guidelines for determining what evidence may be seized); *see also United States v. One Parcel of Property*, 774 F.Supp. 699, 707 (D.Conn.1991) (post-*Buck*, *Leon* inapplicable to warrant utilizing merely a catch-all description of property to be seized).  Accordingly, the *Leon* good faith exception to the exclusionary rule will not serve to make the shotgun found in LaJoice's apartment available as evidence, that is, to avoid its suppression.

*United States v. George, supra* at 77-78.

The search warrant in this case, as previously stated, does not mention a particular crime or criminal activity to which the evidence to be seized must relate. As a result, it "is so unconstitutionally broad that no reasonably well-trained police officer could believe otherwise." *Id.* at 77. Therefore, it is hereby RECOMMENDED that defendant's motion to suppress the evidence seized pursuant to that search warrant be GRANTED.

In the event that the District Judge to whom this case has been assigned does not accept or adopt this RECOMMENDATION to grant the defendant's motion to suppress the evidence on this basis, for purposes of judicial economy, I will address the additional claims made by the defendant in support of his motion to suppress the evidence seized pursuant to the search warrant on May 27, 2003.

**2.      Defendant's Claim That The Warrant Application Was Unsigned And Not Sworn To:**

Admittedly, defendant's counsel was provided with an unsigned, unsworn copy of the application for the search warrant in question by the government as part of its voluntary discovery materials. (*See* Docket #16, Defendant's Exhibit A-4 through A-10 attached thereto). However, the government has submitted a copy of the original application for the search warrant in question as Exhibit B attached to Docket #27. A review of this Exhibit establishes that it was signed and sworn to by both Detective Kohl and Sgt. Worrell on May 27, 2003 before Chautauqua County Court Judge Ward. Therefore, defendant's claim of invalidity of the search warrant in question on this basis

is without legal merit and is DENIED.

### 3.   Defendant's Purported Claim That Judge Ward May Not Have Been Authorized To Sign The Warrant In Question "As Ellicott Justice:"

This attempt as a basis for invalidating the search warrant at issue is also without legal merit.  This Court takes judicial notice that the Hon. John T. Ward is and was a County Court Judge for the County of Chautauqua, State of New York on May 27, 2003 and that the Town of Ellicott, New York exists within the legal boundaries of the County of Chautauqua.  The premises searched pursuant to said warrant, to wit, 3554 West Oak Hill Road, Ellicott, New York, was located within the Town of Ellicott and Chautauqua County.

Section 10.10 of the New York Criminal Procedure Law ("CPL") states that "criminal courts" in New York "are comprised of the superior courts and the local criminal courts."  Section 10.10 subdivision 2 states that "Superior court means: (a) The supreme court; or (b) A county court."  Subdivision 3 of Section 10.10 CPL further states that "local criminal court means: . . . (g) a county judge sitting as a local criminal court."

Section 690.35 of the CPL expressly provides that a search warrant application may be made to:

(a) A local criminal court, as defined in section 10.10 of this chapter, having preliminary jurisdiction over the underlying offense, or geographical jurisdiction over the location to be searched when the search is to be made for personal property of a kind or character described in section 690.10 of this article . . .

Therefore, defendant's claim of invalidity of the warrant at issue on this basis is DENIED.

### 4.    Defendant's Attack On The Warrant Because It Was A "No Knock" Warrant:

The defendant claims that "the request in the application and the authority in the warrant for a no-knock entry was unsupported by any specific evidence or information that anyone in the home was armed, had a weapon, or was dangerous" and because of this "deficiency in the application and warrant," the entry into 3554 West Oak Hill Road, Ellicott, New York on May 28, 2003 "was unreasonable and the evidence seized should be suppressed."  (Docket #16, p. 25).

Section 690.35(4)(b)(i) of the N.Y.C.P.L. expressly authorizes the issuance of a "no-knock" warrant upon a showing that the property sought may be easily and quickly destroyed or disposed of."

The United States Supreme Court has expressly approved the use of "no-knock" search warrants wherein it stated:

> The practice of allowing magistrates to issue no-knock
> warrants seems entirely reasonable when sufficient cause to
> do so can be demonstrated ahead of time.

*Richards v. Wisconsin*, 520 U.S. 385, 396. n. 7 (1997).

> The Court further stated:

> [T]o justify a "no-knock" entry, the police must have a
> reasonable suspicion that knocking and announcing their
> presence, under the particular circumstances, would be
> dangerous or futile, or that it would inhibit the effective
> investigation of the crime by, for example, allowing the
> destruction of evidence.

*Id.* at 394.

The defendant's emphasis or focus on his claim that the warrant application "was unsupported by any specific evidence" of danger by reason of persons armed or weapons present is misplaced.  The sworn application of Detective Kohl and Sgt. Worrell specifically states:

> that there is reasonable cause to believe that:

> (1) the property [to be seized] may be easily and quickly
> destroyed or disposed of . . .

based on their belief:

> that evidence in the computer hardware and software along
> with other stored business records at . . . 3554 West Oak Hill
> Road location[ ] . . . may be quickly destroyed or disposed
> of.

(Docket #16, Defendant's Exhibit A-9 - A-10 attached thereto).

-18-

Judge Ward was satisfied that "reasonable suspicion" on the part of the officers existed that potential evidence would be destroyed if the officers were required to announce their purpose before entering the premises by reason of the fact that he expressly authorized the "no-knock" search warrant.

Even if it were assumed *arguendo* that such "reasonable suspicion" was not made evident in the search warrant application, suppression of the evidence seized, as sought by the defendant, is not an appropriate remedy.

This issue of suppression of evidence seized as a result of a "no-knock" entry was expressly decided by the United States Supreme Court in *Hudson v. Michigan*, ___ U.S. ___, 126 S.Ct. 2159 (June 15, 2006) wherein the Court stated:

> What the knock-and-announce rule has never protected, however, is one's interest in preventing the government from seeing or taking evidence described in a warrant.  Since the interests that were violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable.
>
> *     *     *
>
> In sum, the social costs of applying the exclusionary rule to knock-and-announce violations are considerable; the incentive to such violations is minimal to begin with, and the extant deterrences against them are substantial - incomparably greater than the factors determining warrantless entries when *Mapp* was decided.  Resort to the massive remedy of suppressing evidence of guilt is unjustified.

*Id.* at 2165, 2168.

An argument for suppression of evidence similar to that being made by

the defendant herein was rejected by the Second Circuit Court of Appeals as being

"without merit."  As the Court stated:

> According to appellant, there was not a sufficiently
> particularized showing – as required by *Richards v.
> Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615
> (1997) – that exigent circumstances existed in this case so
> as to justify the issuance of the no-knock warrant.  This
> argument is without merit.
>
> The method of an officer's entry into a dwelling is among the
> factors to be considered in assessing the reasonableness of
> a search under the Fourth Amendment.  *See Wilson v.
> Arkansas*, 514 U.S. 927, 934, 936, 115 S.Ct. 1914, 131
> L.Ed.2d 976 (1995) (holding that Fourth Amendment
> requires state to establish reasonableness of an
> unannounced entry).  "[T]o justify a 'no-knock' entry, the
> police must have a reasonable suspicion that knocking and
> announcing their presence, under the particular
> circumstances, would be dangerous or futile, or that it would
> inhibit the effective investigation of the crime by, for
> example, allowing the destruction of evidence."  *Richards*,
> 520 U.S. at 394, 117 S.Ct. 1416.  *Richards* approved the
> issuance of no-knock warrants.  *Id.* at 396 n. 7, 117 S.Ct.
> 1416.
>
> *Richards* illustrates that a no-knock search may be valid
> even without a no-knock warrant.  *Richards*, 520 U.S. at
> 388, 395-96, 117 S.Ct. 1416 (magistrate deleted no-knock
> portion of proposed warrant; no-knock search valid because
> exigent circumstances existed).  Nevertheless, the issuance
> of a warrant with a no-knock provision potentially insulates
> the police against a subsequent finding that exigent
> circumstances, as defined by *Richards*, did not exist.  The
> exclusionary rule does not apply to evidence obtained by a
> police officer whose reliance on a search warrant issued by

-20-

a neutral magistrate was objectively reasonable, even
though the warrant is ultimately found to be defective.
*Illinois v. Krull*, 480 U.S. 340, 348, 107 S.Ct. 1160, 94
L.Ed.2d 364 (1987) (citing *United States v. Leon*, 468 U.S.
897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)).  Reliance on a
warrant is not objectively reasonable if, for example, the
affidavit supporting the warrant is "so lacking in indicia of
probable cause as to render official belief in its existence
entirely unreasonable."  *Leon*, 468 U.S. at 922-23, 104 S.Ct.
3405 (internal citation omitted).

Applying these principles to this case, we conclude that
appellant is not entitled to relief even assuming that exigent
circumstances, as defined by *Richards*, were absent.  We
find that, regardless of the existence of exigent
circumstances, the officers were entitled to rely on the no-
knock provision of the warrant in good faith.

*United States v. Tisdale*, 195 F.3d 70, 72-73 (2d Cir. 1999).

> **5.      Defendant's Claim Of No Probable Cause For
> The Search Of The Residence At 3554 West
> Oak Hill Road, Ellicott, New York:**

The defendant argues that the application for the search warrant at issue

"did not establish cause to believe any personal property of the type specified in Article

690 of the New York Criminal Procedure Law would be found at the home" . . . "or that

any crime occurred or was occurring at the home."  (Docket #16, p. 20).

Section 690.10 of the NYCPL provides that:

Personal property is subject to seizure pursuant to a search
warrant if there is reasonable cause to believe that it:

1.      Is stolen; or

2.      Is unlawfully possessed; or

3.      Has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense against the laws of this state or another state, provided however, that if such offense was against the laws of another state, the court shall only issue a warrant if the conduct comprising such offense would, if occurring in this state, constitute a felony against the laws of this state; or

4.      Constitutes evidence or tends to demonstrate that an offense was committed in this state or another state, or that a particular person participated in the commission of an offense in this state or another state, provided however, that if such offense was against the laws of another state, the court shall only issue a warrant if the conduct comprising such offense would, if occurring in this state, constitute a felony against the laws of this state.

The application for the search warrant to seize personal property need only contain sufficient information to support a reasonable belief that evidence of a crime may be found in a certain place. *People v. Martinez*, 298 A.D. 897, 749 N.Y.S.2d 118 (4th Dept. 2002); leave to appeal denied 98 N.Y.2d 769; *cert. denied* 538 U.S. 963; rehearing denied 539 U.S. 911 (2003).

The claim of the defendant on this issue is refuted by the sworn statements of Detective Kohl and Sgt. Worrell in the search warrant application and as buttressed by the sworn statements of the complainants attached thereto.  (*See* Docket #16, Defendant's Exhibit A-4 through A-47 attached to the search warrant application).

In her sworn statement, Michelle J. Earl states that she "used [the defendant's] debit and charge cards to pay for car insurance over the phone for other customers" and that the defendant "had a stack of credit cards and a large wad of money in his pockets; there was (sic) credit cards he was using with other people's name (sic) on the credit cards; [and that the defendant] would always keep the credit cards and money with him wherever he went; [the defendant] didn't [leave] anything behind in the office."  (Docket #16, Defendant's Exhibit A-20 attached thereto).  She further states that Carrie Munday, an employee of the defendant, told her that the defendant "takes his modems to his house" and that the defendant "brings modems back and forth from his house."  (Docket #16, Defendant's Exhibit A-22 attached thereto).

Laura A. Raynor states in her sworn statement in response to Detective Kohl's question: "Have you seen Kevin take any paperwork out of the business when he leaves at night or during the day?" as follows: "Yeah.  Kevin usually uses a great big yellow folder and puts it in his briefcase and takes it with him at night when he leaves the store."  (Docket #16, Defendant's Exhibit A-36 attached thereto).  She also states that she has been to the defendant's house on West Oak Hill Road and while there, she observed "a large room with at least two computers in the room off the garage" and that the defendant has advised her "that there is an office at his house."  She also obtained automobile titles at the defendant's house from the defendant's son who "went into another room to get the titles for [her]."  (Docket #16, Defendant's Exhibit A-36 attached thereto).

Richard G. Raynor reported in his sworn statement that while employed by the defendant, he has performed work on automobiles located at 3554 West Oak Hill Road and that he has observed various automobiles in the "two pole barns."  He also states that "there are about 15 or more VIN # plates in the second pole barn in a cardboard box sitting next to the entrance door to the second pole barn."  (Docket #16, Defendant's Exhibits A-38 and A-39 attached thereto).  Richard G. Raynor also states that the defendant "won't let anyone in the three car garage" and "won't tell anyone why they can't go into the three car garage, only [the defendant] and Jay Shaffer are allowed in the three car garage."  (Docket #16, Defendant's Exhibit A-38 attached thereto).

Trooper David A. Sena states in his "Supporting Deposition" that during the course of his interview with the defendant about an auto transaction involving a rental agreement, the defendant advised him that "he may have a copy [of the agreement] at his residence . . . ."  (Docket #16, Defendant's Exhibit A-41 attached thereto).

The aforesaid quoted information provided to Judge Ward in the search warrant application was sufficient to establish "reasonable cause" under Section 690.10 of the NYCPL that the materials described in the warrant application and the search warrant would be found at the defendant's premises located at 3554 West Oak Hill Road, Ellicott, New York.

-24-

**6.      Defendant's Claim That The Agents "Over Executed
         The Warrant By Seizing Items Beyond Those
         Specifically Authorized:"**

The defendant asserts that the searching officers exceeded the authority

of the search warrant "by taking childrens (sic)/family computers and even tax records

for 1996, 1997, 1998, 1999, 2000 and 2001 that were not authorized to be taken;" that

"they took non-customer personal income tax returns even though the only returns

authorized to be seized were 'Customer's 2002 State and Federal Tax Return records

prepared at The Auto Store . . .;' that they "seized at least one medical record (and

probably more), as well as letters that were privileged attorney-client communications."

(Docket #16, p. 23).  As a result, he argues that all of the evidence seized must be

suppressed.


        If not expressly admitted, certainly by implication, the government admits

that "medical records" and "legal correspondence" were seized since it states that

"those items will be returned to the Jamestown PD for whatever further action is

deemed necessary, as they are not part of the records intended for use at trial, but

were in the records retained to allow defense review."  (Docket #25, p. 13, n. 4).

However, the government disputes the defendant's characterization of the search as

being a "general search" or as one that was "overbroad."  (Docket #25, pp. 13-17).

As the Court of Appeals for the Second Circuit has stated:

Government agents "flagrantly disregard" the terms of a warrant so that wholesale suppression is required only when (1) they effect a "widespread seizure of items that were not within the scope of the warrant," *United States v. Matias*, 836 F.2d 744, 748 (2d Cir. 1988), and (2) do not act in good faith, *see Marvin v. United States*, 732 F.2d 669, 675 (8th Cir. 1984) (holding that complete suppression is inappropriate where government "agents attempted to stay within the boundaries of the warrant and . . . the extensive seizure of documents was prompted largely by practical considerations and time contraints"); *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985) (similar); *United States v. Tamura*, 694 F.2d 591, 597 (9th Cir. 1982) (similar); *United States v. Heldt*, 668 F.2d 1238, 1269 (D.C. Cir. 1981) (similar); *see also United States v. Foster*, 100 F.3d 846, 852 (10th Cir. 1996) (ordering blanket suppression when "at the time he obtained the warrant, [the officer who applied for it] . . . knew that the limits of the warrant would not be honored"); *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978) (similar).

\*   \*   \*

The rationale for blanket suppression is that a search that greatly exceeds the bounds of a warrant and is not conducted in good faith is essentially indistinguishable from a general search. *See United States v. Squillacote*, 221 F.3d 542, 556 (4th Cir. 2000) (collecting cases); *cf. United States v. Dzialak*, 441 F.2d 212, 217 (2d Cir. 1971) (describing law enforcement officers as conducting a "general search" when "[i]n executing what was a very precise warrant, the[y] spent more than four hours ransacking a[ ] house for any possible incriminating evidence," and "[o]f the items seized, those which were not described in the warrant far outnumbered those described"). Accordingly, to satisfy the first prong of the two-part test described above, the search conducted by government agents must actually resemble a general search. *See Heldt*, 668 F.2d at 1262 (declining to require "complete suppression" when conduct of government agents did not "result[ ] in a general search"); *Rettig*, 589 F.2d at 423 (ordering blanket suppression where, "[a]s interpreted and

> executed by the [searching] agents, th[e] warrant became an
> instrument for conducting a general search").  *See generally*
> *Dzialak*, 441 F.2d at 217 (describing a general search).

*United States v. Shi Yan Liu,* 239 F.3d 138, 140-141 (2d Cir. 2000); *cert, denied by Jie*

*Hu v. United States*, 534 U.S. 816 (2001).


Neither the moving papers of the defendant nor the government's

response to same provide enough information to enable this Court to make a finding as

to the conduct of the searching officers in carrying out the search and seizure of

evidence from the premises of the defendant on May 28, 2003.  Therefore, it is

RECOMMENDED that the defendant's motion to suppress on this particular basis be

DENIED without prejudice.  If this Court's RECOMMENDATION to suppress the

evidence seized on the basis of an invalid warrant as described above is not adopted

by the District Judge, it will be necessary to hold an evidentiary hearing to resolve this

particular claim.


### 7.  Defendant's Claim That The Issuing Judge Simply Rubber-Stamped The Defective Application:

The defendant claims that the "issuing judge did nothing more than

'rubber stamp' the warrant in approving a warrant that was supported by an application

which nowhere proved that anything criminal occurred or relevant evidence existed at

the place to be sought (sic), and where the warrant authorized broad seizure of

documents and evidence without even deigning to establish that such items existed at

the place to be searched."  (Docket #16, p. 24, ¶ 5).  However, the defendant fails to

provide any underlying factual basis to support this argumentative conclusion.  Since I

have found that the warrant application provided sufficient probable cause for the

issuance of the search warrant (Discussion Item 4 above) by Judge Ward, it cannot be

said that the judge acted in an improper manner in issuing the search warrant, *i.e.*, as a

"rubber stamp" for the police.  Therefore, it is RECOMMENDED that defendant's claim

on this basis be DENIED.


     **8.**     **Defendant's Claim That The Application For The**
              **Warrant Contained False Statements Thereby**
              **Entitling Him To A *Franks* Hearing:**

The defendant's claim of "purposeful inaccuracies in the information

provided to the issuing judge - particularly with regard to taking records 'home' and the

hiding of cars at the home" is not supported by a factual basis referenced by the

defendant.  To the contrary, this Court, for the reasons set forth in Discussion Item #4

above, finds that there was a sufficient factual basis for the assertions made by the

officers in seeking the search warrant authorizing the search of the defendant's home.


> A defendant is permitted to challenge the veracity of a
> [search] warrant in limited circumstances.  One such
> circumstance is where the affidavit in support of the [search]
> warrant is alleged to contain deliberately or recklessly false
> or misleading information.

*United States v. Canfield*, 212 F.3d 713, 717 (2d Cir. 2000); *see also Franks v.*

*Delaware*, 438 U.S. 154 at 164-72 (1978).   *Franks v. Delaware* summarizes the

standard that a defendant must meet in order to be entitled to such hearing:

To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence explained. . . .  Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.  On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.  Whether he will prevail at that hearing is, of course, another issue.

*Franks v. Delaware*, 438 U.S. at 171-72.


The defendant has failed to support his allegations of falsity and reckless disregard for the truth and therefore, his request for a *Franks* hearing is DENIED.

## II.    Defendant's Motion To Dismiss Counts 1 through 7 Of the Superseding[3] Indictment:

The defendant argues that "Counts 1 through 7 of the Superseding Indictment must be dismissed because each count fails to state an essential element of the crime charged under 18 U.S.C. § 287 - that is, Counts 1 through 7 do not allege that a claim was made 'knowing such claim to be false, fictitious, or fraudulent . . .'." (Docket #16, p. 27).

Title 18 United States Code, Section 287 provides:

Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

This motion is now moot by reason of the fact that a Second Superseding Indictment (Docket #17) was returned by the grand jury on April 6, 2006 wherein the

[3] A Superseding Indictment was filed on January 5, 2006 (Docket #11).  A Second Superseding Indictment was filed on April 6, 2006 (Docket #17).  The defendant filed a Notice of Motion dated May 12, 2006 wherein he states:

Defendant Kevin Smith gives notice that for his motions, he filed motions on March 31, 2006 as Docket #16 (motions text with Exhibits A-C), and incorporates by reference that filing here as his motions, including the exhibits attached to it, arguments and requests made in it, etc.

Docket #21.

-30-

deficiencies claimed by the defendant as to Counts 1 through 7 of the prior

Superseding Indictment (Docket #11) were cured.  More specifically, Counts 1 through

7 in the Second Superseding Indictment contain the necessary element of the crime

charged in each count, to wit, that the defendant knowingly made a "false, fictitious and

fraudulent" claim to the "Department of the Treasury, Internal Revenue Service."

Therefore, it is hereby RECOMMENDED that defendant's motion to dismiss Counts 1

through 7 of the Second Superseding Indictment be DENIED.


Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:


This Report, Recommendation and Order be filed with the Clerk of the

Court.


**ANY OBJECTIONS** to this Report, Recommendation and Order must be

filed with the Clerk of this Court within ten (10) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute, Fed. R.

Crim. P. 58(g)(2) and Local Rule 58.2.


The district judge will ordinarily refuse to consider *de novo*, arguments,

case law and/or evidentiary material which could have been, but were not presented to

the magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co., Inc. v.

Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure**

**to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

S/ H. Kenneth Schroeder, Jr.
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**

**DATED:**     **Buffalo, New York**
              **December 15, 2006**